Eric M. Fraser, 027241
Phillip W. Londen, 032488
OSBORN MALEDON, P.A.
2929 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012
(602) 640-9000
efraser@omlaw.com
plonden@omlaw.com

Michael Erbele (*pro hac vice application forthcoming*)
Scott W. Johnston (*pro hac vice application forthcoming*)
Brent E. Routman (*pro hac vice application forthcoming*)
James W. Beard (*pro hac vice application forthcoming*)
MERCHANT & GOULD P.C.
150 South Fifth Street, Suite 2200
Minneapolis, Minnesota 55402
(612) 332-5300
merbele@MerchantGould.com
sjohnston@merchantgould.com
broutman@merchantgould.com
jbeard@MerchantGould.com

*Attorneys for Plaintiff Sung Hwan E&B Co., Ltd.*
*d/b/a SHEnB Co. Ltd.*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Sung Hwan E&B Co., Ltd. d/b/a SHEnB Co. Ltd.,<br><br>Plaintiff,<br><br>v.<br><br>Aesthetics Biomedical, Inc., and MaryAnn Guerra,<br><br>Defendants. | Case No.<br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Sung Hwan E&B Co., Ltd. d/b/a SHEnB Co. Ltd. ("SHEnB" or "Plaintiff") brings this trademark infringement complaint against Defendants Aesthetics Biomedical, Inc. ("ABM") and MaryAnn Guerra ("Guerra," and together with ABM, "Defendants"). SHEnB alleges as follows:

**<u>INTRODUCTION</u>**

1. This is an action for trademark infringement of SHEnB's VIVACE

trademark (the "VIVACE Mark") and unfair competition under Section 43(a) of the Lanham Act, codified at 15 U.S.C. § 1125, for infringement of SHEnB's registered SH-TIP trademark (U.S. Registration No. 7,397,912) (the "SH-TIP Mark") under Section 32 of the Lanham Act, 15 U.S.C. § 1114, and for infringement of SHEnB's VIVACE trademark at common law under A.R.S. § 44-1452.

2. As set forth in detail below, SHEnB's action arises from Defendants' unauthorized use of the VIVACE Mark and the SH-TIP Mark in connection with the promotion, marketing, advertising, offer for sale, and/or sale of radio frequency micro-needling devices, replacement needle cartridges, and related products and services.

3. Defendants use the VIVACE Mark and the SH-TIP Mark in advertising, marketing, domain names, websites, social media, packaging and other means to promote the sale of products made by third parties.

4. Plaintiff is a South Korean manufacturer of skin care devices, including radio frequency micro-needling devices that are sold around the world, including in the United States.

5. Defendant ABM is a Delaware corporation, and on information and belief its principal place of business is in Phoenix, Arizona, and it is a distributor of skin care devices. ABM operates and conducts business in Arizona, including through the sale and distribution of skin care devices forming the basis of the claims herein.

6. On information and belief based on public information, Defendant Guerra is a resident of Phoenix, Arizona, and took part in the acts alleged herein while a resident of this judicial district.

**JURISDICTION AND VENUE**

7. The Court has original subject matter jurisdiction over SHEnB's claims for trademark infringement and unfair competition under Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)), pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a), and supplemental jurisdiction over the related state claims pursuant to 28 U.S.C. § 1367.

8. The Court has general personal jurisdiction over Defendants ABM and

Guerra because they are residents of the District. Alternatively, the Court has specific personal jurisdiction over Defendants because, on information and belief, they transacted business and committed tortious acts within this District, and SHEnB's claims arise from those activities.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in the District of Arizona.

## FACTUAL ALLEGATIONS

10. SHEnB began developing, marketing, and selling innovative products related to skin aesthetics and obesity based on radiofrequency technologies in 1999.

11. Following a decade of development, SHEnB invented and manufactured an advanced radio frequency microneedling device designed to alleviate the visible effects of aging and acne scarring through a minimally invasive procedure.

12. In or about February 2011, SHEnB created, adopted, and began using the trademark VIVACE on or in connection with the radio frequency micro-needling devices it manufactured, and to this day, manufactures.

13. SHEnB developed and prepared a system comprising a radio frequency microneedling device for sale under the VIVACE Mark (the "VIVACE Device"), along with needle tip cartridges ("VIVACE Cartridges," combined with the VIVACE Device, the "VIVACE System").

14. At each session, a health care professional touches the radio frequency microneedle tips on the wand of the VIVACE Device to the face and neck of a patient. The VIVACE Device delivers heat to the dermis (the middle layer of the skin), which stimulates collagen production, smooths the skin, and alleviates the visible effects of aging and acne scarring. A typical patient undergoes three sessions, approximately thirty to forty-five minutes long, over the course of several weeks. During each session, a health care professional applies the micro-needle tips of the wand of the VIVACE Device to the face and neck of the patient. The needle tip cartridges are disposable, single use needle cartridges that must be discarded after each session.

15. SHEnB first launched the VIVACE System outside the United States, including in Korea and Europe. In 2013, SHEnB acquired a European Certification (CE) for the VIVACE Device, and a separate CE for the VIVACE Cartridges.

16. Between 2013 and 2016, SHEnB expanded its use of the VIVACE Mark to the United States. Beginning in 2013, SHEnB pursued approval from the Food and Drug Administration ("FDA"), began promoting the device, and worked to identify distributors to distribute and sell the product in the United States.

17. Over the next three years, SHEnB used the VIVACE Mark continuously in the United States in connection with its efforts to commercialize and distribute its invention. These efforts included:

a. Shipments of the VIVACE Device and VIVACE System to and within the United States;

b. Demonstrations of the VIVACE Device and VIVACE System at trade shows and to U.S.-based doctors;

c. Marketing emails to U.S.-based doctors and other potential purchasers of the VIVACE Device to "pre-sell" the VIVACE System, in order to generate interest and demand for the device in advance of the FDA's approval;

d. Use of the VIVACE Mark on micro-needling devices manufactured by SHEnB during three separate clinical trials; and

e. Support and repair services.

***<u>Shipments and Sales</u>***

18. SHEnB shipped a VIVACE Device on September 25, 2013 to YMS Consulting ("YMS," located in Florida), and Medi-Khan, Inc. (based in California) for display at trade shows, and which reflected a sale of $11,000 of the VIVACE System in the United States.

19. On the same date, SHEnB shipped thirty VIVACE Cartridges to the United States.

20. On April 16, 2014, SHEnB shipped an additional VIVACE Device along

with 30 VIVACE Cartridges to YMS and Medi-Khan for further demonstrations in the United States, reflecting a $10,000 sale.

***<u>Trade Shows and Conferences</u>***

21. Beginning in 2013 SHEnB raised awareness of the VIVACE Mark and device by demonstrating the product at conferences and trade shows directed to plastic surgeons and the aesthetics health care industry, and further by promoting it to potential purchasers and distributors.

22. SHEnB's use of the VIVACE Mark in commerce in 2013 included:

a. In October 2013, the CEO of SHEnB—Ms. Sun Young Kang—personally demonstrated the VIVACE Device at Medi-Khan's booth at the American Society of Plastic Surgeons ("ASPS") annual meeting in San Diego, California. The 2013 ASPS annual meeting had an estimated attendance of 4,500.[1]

b. Also in October 2013, SHEnB displayed the VIVACE Device at the annual meeting of the California Academy of Cosmetic Surgery ("CACS") in Newport Beach, California.

23. SHEnB continued its use of the VIVACE Mark in commerce in 2014, including:

a. In January 2014, SHEnB displayed the VIVACE Device at the annual meeting of the American Academy of Cosmetic Surgery in Hollywood, Florida, with more than 1,000 practitioners, practice managers, exhibitors,

---

[1] *See* "American Society of Plastic Surgeons Spotlights Aesthetic Surgery At 82nd Annual Meeting," *available at* https://news.cision.com/american-society-of-plastic-surgeons/r/american-society-of-plastic-surgeons-spotlights-aesthetic-surgery-at-82nd-annual-meeting%2Cc9465338.

researchers and health specialists estimated to be in attendance the event.[2]

b. In July 2014, SHEnB displayed the VIVACE System at the Aesthetic Show in Las Vegas, Nevada.

c. In October 2014, SHEnB again displayed the VIVACE System at the annual meeting of the CACS in Newport Beach, California.

d. Also in October 2014, SHEnB displayed the VIVACE System at the ASPS annual meeting in Chicago, Illinois, which drew an estimated 2,300 attendees and over 250 exhibitors.[3]

24. SHEnB's use of the VIVACE Mark in commerce continued into 2015:

a. In January 2015, SHEnB displayed the VIVACE System at the AACS Meeting in New Orleans, Louisiana.

b. In July 2015, SHEnB displayed the VIVACE System at the (1) VCS annual meeting in Las Vegas, Nevada, (2) the Aesthetic Show in Las Vegas, Nevada, and (3) the Cosmoprof North America ("CPNA") trade show in Las Vegas, Nevada. Notably, CPNA featured nearly 30,000 attendees and 1,107 exhibitors.[4]

c. In October 2015, SHEnB displayed the VIVACE System at the 2015 CACS Annual Meeting in Santa Monica, California.

25. For each of the trade shows and conferences discussed in Paragraphs 21-24, the attendees were able to see the radio frequency micro-needling device,

---

[2] *See* "United Medical Credit to attend 30th Cosmetic Surgery Conference -- United Medical Credit | PRLog," ***available at*** https://www.prlog.org/12261830-united-medical-credit-to-attend-30th-cosmetic-surgery-conference.html.

[3] *See* "LifeCell Named Platinum Supporter of ASPS's Plastic Surgery The Meeting" ***available at*** https://www.prweb.com/releases/lifecell_named_platinum_supporter_of_asps_s_plastic_surgery_the_meeting/prweb12231332.htm.

[4] *See* "Cosmoprof North America 2015 Announces Record-Breaking Numbers and Success of New Programs Post-Show," ***available at*** https://www.prweb.com/releases/cosmoprof_north_america_2015_announces_record_breaking_numbers_and_success_of_new_programs_post_show/prweb12867865.htm.

manufactured by SHEnB and bearing Plaintiff's VIVACE Mark. The VIVACE Mark was featured prominently on the front of the device, on the LCD Panel display on the front of the device, on the serial number plate affixed to the back of the device, and was further included on the manual shipped with the device.

26. Additionally, PowerPoint materials were presented at each of the trade shows and conferences of Paragraphs 21-24, and other advertising materials featuring both Plaintiff's name and the VIVACE Mark were disseminated to attendees.

27. Plaintiff's SHENB house mark was also displayed on the device displayed and demonstrated at the trade shows and conferences of Paragraphs 21-24, such that the combined tens of thousands of attendees were shown that the VIVACE System was made and sold by SHEnB.

28. During the same period, Plaintiff provided an instruction manual for operating the device to customers and potential customers, as well as a repair manual for fixing the VIVACE Device. Both manuals bore the VIVACE Mark alongside Plaintiff's SHENB house mark.

***<u>Marketing Emails</u>***

29. From 2013 through 2015, the owner of YMS (Mr. GukJeong Moon) and a Senior Consultant of Medi-Khan (Mr. Steven Hwang) also sent emails to doctors and potential purchasers of the VIVACE Device and VIVACE System to promote the product on behalf of SHEnB.

***<u>Clinical Trials</u>***

30. In addition to the uses in commerce discussed above, SHEnB's micro-needling device (bearing the VIVACE Mark) was also used in treating patients in the U.S. between 2013 and 2016 as part of clinical studies for obtaining FDA approval of the VIVACE micro-needling device.

31. In early 2014, SHEnB shipped the VIVACE Device previously displayed at the ASPS annual meeting (*see* Paragraph 22.a) to Phoenix, Arizona for the purpose of conducting clinical trials with Dr. Steven Gitt. In and around March 2014, Dr. Gitt

conducted clinical trials on 32 patients, with each patient participating in three treatments with SHEnB's VIVACE Device lasting 30-45 minutes each. The results of these treatments were then provided to the FDA on or about April 14, 2014.

32. On or about December 2014, the second round of clinical trials were conducted by Dr. Gitt on an additional 33 patients.

33. In or around October to November 2015, SHEnB shipped a VIVACE Device to Albuquerque, New Mexico, where it was used to conduct a third clinical trial with Dr. Taghizadeh.

34. In total, from 2014 through 2015, at least three rounds of clinical trials including 95 patients were conducted using the VIVACE System. Each trial included at least thirty patients. During the trials, the VIVACE Mark was prominently displayed on the front of the device and on the LCD Panel display. For thirty to forty minutes per treatment session, each trial participant and health care professional could see the VIVACE Mark.

***<u>Support Services</u>***

35. After securing FDA approval for SHEnB's VIVACE System, SHEnB provided repair and warranty services, along with technical support, in the United States through Greg Moon of YMS Consulting. Mr. Moon provided these services as Plaintiff's agent from 2016 through 2017, in satisfaction of Plaintiff's warranty obligations as the manufacturer of the VIVACE System.

36. In connection with Mr. Moon's provision of support services, SHEnB provided YMS Consulting with information on how to repair the VIVACE System and devices, provided spare parts including LCD panel screens, hand pieces, and cables.

***<u>Plaintiff's Limited License to ABM</u>***

37. In February 2016, Plaintiff and Defendant ABM executed an exclusive distribution agreement, which obliged Defendant ABM to manage marketing and sales efforts for the VIVACE System in the United States on behalf of Plaintiff (the

"Distribution Agreement").

38. Before entering into the Distribution Agreement, however, Plaintiff offered for sale, demonstrated, sold, and shipped the VIVACE System and manuals to other entities in the United States, in addition to the other commercial activities described above in Paragraphs 16 through 36.

39. Plaintiff and Defendant ABM amended the Distribution Agreement in 2017 and 2018.

40. The 2017 amendment, titled the "First Amended and Restated Exclusive License to Distribution" (the "2017 Amendment") included language that "amends, restates, and replaces in its entirety the [Distribution Agreement]," identified Defendant ABM as the subject licensee, and granted an exclusive license to *distribute* the VIVACE System in the United States, Canada, and Mexico. The provisions of the 2017 Amendment confirmed the license to distribute granted by Plaintiff to Defendant ABM and permitted the use of the VIVACE mark to develop business in, promote the sale of, and sell the VIVACE System in the United States.

41. The Original Distribution Agreement and the 2017 Amendment did not assign any ownership rights or otherwise permit Defendants to obtain any ownership interest in the VIVACE Mark. Rather, the agreements gave Defendant ABM rights to use the VIVACE Mark as a licensee.

42. The Distribution Agreement and its amendments did not permit Defendants to own or register the VIVACE Mark, or any mark containing the VIVACE Mark, in the United States or any other country.

***<u>Defendants' Failed Claims to Priority</u>***

43. Notwithstanding the foregoing, Defendants have previously asserted ownership rights to the VIVACE Mark, and have continued to sell radio frequency microneedling devices, replacement needle cartridges, and related products under the VIVACE Mark that were neither authorized nor manufactured by Plaintiff.

44. Defendant ABM was not incorporated until 2016. In December 2017,

Defendant ABM was registered as a foreign for-profit corporation in the state of Arizona, identifying Defendant Guerra as the registered agent for service.

45. All of the uses in commerce described above in Paragraphs 16 through 35 were before, and the uses in commerce described in Paragraph 36 were commenced, were before Defendant ABM was incorporated.

46. Defendants, through Rule 30(b)(6) testimony in other proceedings, admitted that they did not have any role in the development of the VIVACE System, and that they became aware of the VIVACE System—under the VIVACE Mark—in 2015.

47. Similarly, Defendants admitted through the same testimony that they were aware that Dr. Steven Gitt of North Valley Plastic Surgery in Scottsdale, Arizona had been involved in clinical testing of Plaintiff's VIVACE device before Defendant ABM entered into the Distribution Agreement in 2016.

48. Through the same testimony, Defendants further admitted that they had no role in naming the VIVACE System, and instead that Plaintiff had created the VIVACE Mark.

***The TTAB Cancellation Proceeding***

49. On July 14, 2020, SHEnB filed a petition to cancel Defendant ABM's U.S. Trademark Registration No. 5,317,218 for VIVACE and U.S. Trademark Registration No. 5,317,219 for THE VIVACE EXPERIENCE with the Trademark Trial and Appeal Board (the "TTAB"), Cancellation No. 92,074,719, asserting non-ownership, likelihood of confusion, and fraud.

50. On February 14, 2025, the TTAB issued a decision granting SHEnB's petition to cancel Defendant ABM's VIVACE registration on the ground of non-ownership, finding that Defendant ABM was not the owner of the VIVACE mark when it filed its use-based application and that the registration is void ab initio. A true and correct copy of the TTAB decision is attached hereto as **Exhibit A**.

51. In the same decision, the TTAB granted SHEnB's petition to cancel Defendant ABM's THE VIVACE EXPERIENCE registration on the ground of likelihood

of confusion with SHEnB's common-law VIVACE mark. (*See* Ex. A, at 55.)

52. The TTAB found that SHEnB established priority in the VIVACE mark at least as early as February 2014, predating the parties' distribution relationship, and rejected Defendant ABM's affirmative defenses of equitable estoppel, acquiescence, and abandonment. (*See* Ex. A, at 52.)

53. Defendants have appealed the TTAB's decision to the United States Court of Appeals for the Federal Circuit, No. 2025-1645, and that appeal remains pending. The TTAB's decision is therefore not yet final, but its factual findings are consistent with, and independently corroborate, the allegations of this Complaint.

***<u>SHEnB's Use of the VIVACE Mark in Commerce</u>***

54. In the period before the Distribution Agreement with Defendant ABM, SHEnB was the only entity to use the VIVACE Mark in the United States. SHEnB provided all education, training, support, and warranty and repair services for the devices.

55. Between February 2, 2016, and July 12, 2022, Defendant ABM was SHEnB's exclusive licensee and distributor of SHEnB's VIVACE microneedling device in the United States pursuant to an Exclusive Distributorship Agreement dated February 2, 2016, and a First Amended Exclusive License to Distribute Agreement dated July 12, 2017.

56. By virtue of SHEnB's uses of the VIVACE Mark, including as described above at Paragraphs 16 through 36, SHEnB's rights in the VIVACE Mark were already established before February 2, 2016, and before Defendant ABM undertook any distribution activities related to SHEnB's products in the United States.

57. The parties' Distribution Agreement, and thus the right to distribute SHEnB's VIVACE micro-needling device and replacement tips, expired in July 2022 and was not renewed.

58. No agreement between Plaintiff and Defendants assigned SHEnB's trademark rights from Plaintiff to Defendants ABM or Guerra.

59. No rights to SHEnB's VIVACE Mark have been assigned to Defendants.

60. Defendant ABM was a mere former distributor of SHEnB's VIVACE System and licensee of SHEnB's VIVACE Mark, leaving Defendants no basis to claim any ownership rights to SHEnB's VIVACE Mark or any mark containing or confusingly similar with the VIVACE Mark, namely marks including the term VIVACE.

***Defendants' Unauthorized Use of the Mark***

61. Notwithstanding the termination in July 2022 of Defendant ABM's license to use the VIVACE Mark and authorization to distribute SHEnB's VIVACE System, Defendants continued to use the VIVACE Mark without authorization to market and sell radio frequency microneedling devices, replacement needle tip cartridges and related skin care products.

62. On information and belief based on the site contents, Defendant ABM operated and controlled the content on www.vivaceexperience.com.[5] Through the vivaceexperience.com website, Defendant ABM continued to advertise, market, and offer for sale products under the VIVACE Mark, without attributing the VIVACE Mark or VIVACE System to Plaintiff, through at least January 2025. A true and correct archival copy of www.vivaceexperience.com captured by the Internet Archive on January 21, 2025[6] is attached as **Exhibit B** and excerpted below, which reflects Defendant ABM's unauthorized use of the VIVACE mark, and which reflects "© 2022 – Aesthetics Biomedical, Inc." in the footer:

[5] *See* www.vivaceexperience.com/privacy-policy *(last accessed June 18, 2026)* ("Aesthetics Biomedical® Inc. operates the website (www.vivaceexperience.com) (Website) which is hosted in the United States of America").

[6] *See* "Vivace Microneedling | Newest Generation of RF Microneedling," *available at* https://web.archive.org/web/20250121103447/https://vivaceexperience.com/.




63. As shown in Exhibit B, Defendant ABM further associated itself with the VIVACE Mark without authorization, inviting visitors to learn about the "Vivace® RF Microneedling Device & Experience" from Defendant ABM:




(*See* Ex. B, at 3-4.)

64. On information and belief based on the site contents, Defendant ABM operated and controlled the content on www.vivaceultra.com (together with

www.vivaceexperience.com, the "VIVACE Domains").[7] Through the www.vivaceultra.com website, Defendant ABM continued to advertise, market, and offer for sale products under the VIVACE Mark, without attributing the VIVACE Mark or VIVACE System to Plaintiff, through the present date. A true and correct copy of the www.vivaceultra.com landing page, which reflects "Copyright © 2026 Aesthetics Biomedical, Inc." in the footer, is attached hereto as **Exhibit C.**

65. Defendant ABM also used the VIVACE Mark to market related products and services, such as the "Vivace Experience." On information and belief based on information on Defendant ABM's website, the "Vivace Experience" consisted of other products including the "Vivace Experience Sooth Mask" and "Boost Serum." A true and correct copy of a blog post touting the "Vivace Experience" products is attached hereto as **Exhibit D**.

66. Defendant ABM additionally used the VIVACE Mark without authorization to promote its businesses generally. For example and on information and belief based on the account name, on June 2, 2026, Defendant ABM posted to its Instagram Account a flyer for a "Demo Day" event at its headquarters, promoting an opportunity to "win a Vivace RF Microneedling Device." A true and correct copy of the Instagram post is attached hereto as **Exhibit E.**[8]

67. As another example, at www.vivaceexperience.com, Defendant ABM presents "The Vivace Experience Before & After Incentive Program." The subject program solicits patients to "[s]ubmit your Before and After results and our team at Aesthetics Biomedical® will reach out to you to verify and accept your submission based upon if the qualifications are met. If qualified, you will receive ten (10) complimentary

---

[7] *See* https://vivaceultra.com/privacy-policy/ *(last accessed June 18, 2026)* ("Aesthetics Biomedical® Inc. operates the website (www.vivaceultra.com) which is hosted in the United States of America").

[8] Available at www.instagram.com/aestheticsbiomedical/p/DZGO2x5Es99/ (visited June 24, 2026).

Vivace® Needle Sets!”[9]

68. On information and belief based on the expiration of Defendant ABM’s rights to distribute authorized VIVACE System products, Defendant ABM’s offer of “ten (10) complimentary Vivace® Needle Sets!” evinces further infringement of the VIVACE Mark, through the distribution and sale of unauthorized needle cartridges bearing the VIVACE Mark.

69. A similar incentive program is promoted at vivaceultra.com. The “Before & After Incentive Program” page at vivaceultra.com includes the same request that patients “[s]hare your Vivace Ultra™ before and after photos with [Defendant ABM],” and offers “[i]f you meet the criteria, Aesthetics Biomedical® Inc. will express our gratitude by gifting you three (3) complimentary Vivace Ultra™ Experience Kits®!”[10]

70. On information and belief based on the expiration of Defendant ABM’s rights to distribute authorized VIVACE System products, Defendant ABM’s offer of “three (3) complimentary Vivace Ultra™ Experience Kits” evinces further infringement of the VIVACE Mark, through the distribution and sale of unauthorized products bearing the VIVACE Mark.

71. Defendant ABM further used the vivaceultra.com site to improperly direct potential patients to clinics using its unauthorized products bearing the VIVACE Mark, along with other goods and services offered by Defendant ABM. For example, the main page at vivaceultra.com prominently offered to help visitors “Find a Physician” (Ex. C):

---

[9] *See* https://vivaceexperience.com/the-vivace-experience-before-after-incentive-program/ (visited July 13, 2026) [no longer available]; *see also* “The Vivace Experience® Before & After Incentive Program,” *available at* https://web.archive.org/web/20260419210439/https://vivaceexperience.com/the-vivace-experience-before-after-incentive-program/ (captured April 19, 2026).

[10] https://vivaceultra.com/the-vivace-ultra-before-after-incentive-program/ (visited July 13, 2026) [no longer available]; *see also* Before & After Incentive Program, *available at* https://web.archive.org/web/20250713175256/https://vivaceultra.com/the-vivace-ultra-before-after-incentive-program/ (captured July 13, 2025).




72. Visitors following the link (https://vivaceultra.com/contact-us/, visited June 24, 2026) were presented with a map interface, which by default presented clinics in the Phoenix metro area:




73. Through "Find a Physician" page, Defendant ABM is improperly using the

VIVACE Mark without authorization to profit from Plaintiff's trademark rights and divert sales of products and services from clinics and doctors using authentic VIVACE Systems, and in turn, deny Plaintiff the opportunities to provide authentic VIVACE products and services to the same visitors.

74. On or around August 14, 2026, Defendant ABM published a LinkedIn post and webpage promoting a "Vivace Masterclass," continuing and willfully infringing Plaintiff's VIVACE Mark.[11] A true and correct excerpt of the LinkedIn post is attached as **Exhibit F** and excerpted below:

[11] *See* "Vivace Masterclass: Advanced Techniques, Clinical Insights, and Live Q&A - Aesthetics Biomedical," ***available at*** https://aestheticsbiomedical.com/event/vivace-masterclass/ (visited Aug. 24, 2026); https://www.linkedin.com/feed/update/urn:li:activity:7492650479072473088/ (visited Aug. 24, 2026).

**Aesthetics Biomedical® Inc**
2w •

+ Follow ···

Radiofrequency really works, but how you use it matters!

Join us for the Vivace Masterclass on September 2 at 1:00pm to explore advanced RF microneedling techniques, clinical insights, and strategies designed to help providers maximize their treatment approach.

Hear from experienced providers, learn practical techniques, and get your questions answered during a live Q&A.

Register here: https://lnkd.in/gvw9T9BD



75. These efforts demonstrate an intent to divert consumers from Plaintiff's own VIVACE System products and services, continuing to the present date, creating a likelihood of confusion as to the source, sponsorship, affiliation, and endorsement of the VIVACE Domains.

76. The foregoing allegations demonstrate a bad faith intent to profit from Plaintiff's VIVACE Mark.

77. Defendant ABM's conduct was and continues to be willful, intentional, and in deliberate disregard of Plaintiff's rights in the VIVACE Mark.

***<u>Defendant Guerra's Sale of VIVACE Devices and Replacement Needle Cartridges</u>***

78. Defendant Guerra authorized, directed, and participated in the infringement of the VIVACE Mark, including at least the infringements detailed above in Paragraphs 61 to 77. Defendants themselves attribute the scope and magnitude of Defendants' infringement of the VIVACE Mark to the authorization, direction, and participation of Defendant Guerra.

79. In October 2023, Defendant Guerra appeared in a video promoting Defendant ABM, specifically promoting Defendant ABM's "Vivace UltraVision" product and stating "Through COVID, we continued to advance the development of the Vivace Ultra with the Vision handpiece[.]"[12]

80. In May 2024, Defendant Guerra personally directed providers and patients interested in Defendant ABM's "Vivace UltraVision" product to visit Defendant ABM's website for information.[13] A true and correct copy of the article on AZBio.com, reflecting

---

[12] *See* YOUTUBE.COM, 2023 AZBio Fast Lane Honoree – Aesthetics Biomedical Inc. (posted Oct. 1, 2023), ***available at*** https://youtu.be/xPc0Rezv2bU?t=108 (visited Aug. 24, 2026).

[13] *See* "Lasering USA Announces Strategic Partnership with Aesthetic Biomedical® Inc. | AZBio," ***available at*** https://www.azbio.org/lasering-usa-aesthetic-biomedical-inc (visited Aug. 24, 2026). *And see* LinkedIn Post by MaryAnn Guerra, ***available at*** https://www.linkedin.com/posts/themaryannguerra_aesthetics-biomedical-inc-we-believe-it-ugcPost-7183859642089832450-lyEQ/ ("we believe it is important to partner, particularly with those companies who can benefit our providers and their clients. Our partnering with Lasering USA to combine the award winning Vivace UltraVision with

Defendant Guerra's statements, is attached as **Exhibit G.**

81. In a blog post dated November 28, 2024—over two years after the termination of Defendant ABM's distribution rights—Defendant ABM asserted that "***[u]nder Guerra's leadership***, Aesthetics Biomedical® Inc. has emerged as a trailblazer in the field of aesthetics, introducing cutting-edge technologies that have revolutionized skincare and rejuvenation. From the acclaimed ***Vivace Microneedle RF device*** to the revolutionary SoME® Skincare, and recent launch of the Arizona-manufactured UltraVision™ Radiofrequency Microneedling device, ***the company's portfolio reflects Guerra's unwavering commitment to excellence and innovation***" (emphases added).[14] A true and correct copy of the blog post reflecting the quoted language is attached hereto as **Exhibit H**.

82. Beyond the admitted general authorization, direction, and participation of Defendant Guerra in the infringement of Plaintiff's VIVACE Mark, above, Defendant Guerra personally participated in Defendants' infringement of Plaintiff's VIVACE Mark.

83. Defendant Guerra's direct participation in Defendants' infringement of Plaintiff's VIVACE Mark is demonstrated through her consistent promotion of Defendant ABM products and services under Plaintiff's VIVACE Mark, including on LinkedIn.

a. In October 2022, after the termination of Defendant ABM's rights to distribute Plaintiff's VIVACE System and any right to use the VIVACE Mark, Defendant ABM marketed a product under the VIVACE ULTRA mark. Defendant Guerra participated in the promotion of the product,

---

the Venezia Lift Hybrid CO2, into one outstanding package, allows our providers to not only benefit from an effective combination treatment, but also amazing pricing. Both Aesthetics Biomedical® Inc and Lasering USA are available to introduce you to the new state of the art technology that combines personalization, precision and perfection!" (visited Aug. 24, 2026).).

[14] *See* "MaryAnn Guerra Outstanding Women in Business | Aesthetics Biomedical," *available at* https://aestheticsbiomedical.com/blog/celebrating-excellence-aesthetics-biomedicals-maryann-guerra-named-among-phoenix-business-journals-2024-outstanding-women-in-business/ (visited August 21, 2026).

stating in a press release that "[t]he expeditious clearance of Vivace Ultra, allows us to provide physicians, aesthetic practitioners and patients the unmatched precision and unique visualization in the most advanced and versatile radiofrequency (RF) microneedling technology, for the entire body, in the market[.][15] A true and correct copy of the press release, published by Practical Dermatology and reflecting Defendant Guerra's statement, is attached hereto as **Exhibit I**.

b. In connection with the same marketing efforts described in Paragraph 83, in October 2022, Defendant Guerra posted on her personal LinkedIn account, stating "Vivace UltraTM contains a novel, uniform microneedling radiofrequency technology invented by Aesthetics Biomedical for this device."[16] A true and correct copy of Defendant Guerra's LinkedIn post of October 2022 is attached as **Exhibit J**.

c. In or around May 2023, Defendant ABM published a post to its LinkedIn account, promoting one of its "lovely Vivace Ultra providers." Defendant Guerra reposted Defendant ABM's post to her personal LinkedIn account, further promoting the infringing use by stating "[w]e are excited to have more Vivace Ultra RF micro needling devices in the market!" and thanking her "loyal customers."[17] A true and correct copy of Defendant Guerra's post, including Defendant ABM's post, is attached as **Exhibit K** and excerpted below:

---

[15] "Aesthetics Biomedical's Vivace Ultra Wins FDA Clearance - PracticalDermatology," *available at* https://practicaldermatology.com/news/aesthetics-biomedicals-vivace-ultra/2461390/.

[16] LinkedIn Post, MaryAnn Guerra, *available at* https://www.linkedin.com/posts/themaryannguerra_rfmicroneedling-vivaceexperience-someskincare-ugcPost-6988477652508561408-yaEC/ (visited August 21, 2026).

[17] *See* https://www.linkedin.com/posts/themaryannguerra_vivace-vivaceexperience-share-7047647222829617152-FVUm/ (visited Aug. 21, 2026).




d. In or around May 2024, Defendant Guerra published a photograph to her personal Instagram account, promoting Defendant ABM's infringing product using the text "The Vivace Ultra is the most advanced RF device available on the market, equipped with ultrasound-assisted RF Microneedling technology." A true and correct copy of Defendant Guerra's Instagram post is attached as **Exhibit L** and excerpted below:




e. In or around July 2025, Defendant Guerra personally posted a solicitation for a "special CEO 4th of July" sale, promoting the service and consumables for the VIVACE System in addition to new VIVACE devices.[18] A true and correct copy of Defendant Guerra's LinkedIn post is attached as **Exhibit M** and excerpted with annotations below:

---

[18] *See* https://www.linkedin.com/posts/julia-fomenko888_activity-7343735938486870016-b_1u (visited Aug. 21, 2026).



MaryAnn Guerra
President/CEO Aesthetics Biomedical, Inc and
1y

At Aesthetics Biomedical® Inc, we prioritize innovation, quality, and safety. Personalization is key to ensuring consumer safety as we recognize and celebrate our differences. Our company focus is on highlighting the unique value that our UltraVisionRF Microneedling device brings to both consumers and providers, enhancing personalized treatment outcomes. Stay tuned for exciting updates and planned enhancements to the UltraVision device.

In line with this commitment, I am thrilled to announce a special CEO 4th of July deal. While we continue to appreciate the Vivace® RF Legacy device and offer best pricing on consumables and outstanding service support since 2016, our primary focus is now on the UltraVision. To streamline inventory, we are offering providers the opportunity to name their price for acquiring a new Vivace Legacy device. With varying prices for RF Microneedling devices, the choice is yours on what you believe is a fair value for a Vivace® Legacy device. Simply email me your offer at maryann@aestheticsbiomed.com. This exclusive deal concludes on July 7, and I will confirm accepted offers by the close of business on July 8. Act fast before this limited-time opportunity slips away.

Join the Aesthetics Biomedical® Inc family!

24

Like Comment Share

84. As demonstrated by the exemplary infringing uses of the VIVACE Mark described in Paragraph 83, Defendant Guerra was consistently involved in authorizing, directing, and participating in the infringement of Plaintiff's VIVACE Mark after the termination of the Distribution Agreement.

85. On information and belief based on the foregoing allegations, Defendant Guerra directed, authorized, or otherwise participated in each of Defendant ABM's infringing uses.

***Defendant ABM's Sale of VIVACE Devices and Replacement Needle Cartridges***

86. Defendant ABM has placed no additional orders for authentic VIVACE System products, including for the VIVACE device or replacement needle cartridges,

since the termination of Defendant ABM's Distribution Agreement. Notwithstanding, Defendant ABM has continued to distribute and sell products and offer services under the VIVACE Mark without authorization.

87. For example, a resale website, https://www.offeraesthetic.com/, includes a listing for a microneedling device under model name "VIVACE ULTRA VISION" with a manufacture date of April 24, 2024 – evincing ongoing sales and distribution of unauthorized products. A true and correct copy of the listing at https://www.offeraesthetic.com/products/2024-aesthetics-biomedical-vivace-ultra-vision-for-sale, captured on June 19, 2026, is attached hereto as **Exhibit N** and excerpted below[19]:




88. The information contained in the excerpt of Paragraph 87 further indicates that the subject microneedle device was not manufactured by Plaintiff, and instead indicates it was "Made in the U.S.A." by Defendant ABM. The authentic VIVACE System devices manufactured by SHEnB, and for a time distributed by Defendant ABM, were manufactured in Korea.

89. Another resale website, MNML Aesthetics, includes a listing for a microneedling device under model name "VIVACE ULTRA VISION" with a

[19] The serial number is redacted in the captured listing.

manufacture date of July 17, 2023. A true and correct copy of the listing at https://www.mnmlaesthetics.com/products/2023-vivace-ultra-ultrasound-guided-rf-microneedling-platform, captured on July 13, 2026, is attached hereto as **Exhibit O** and excerpted below:




90. Defendant ABM has further sold replacement needle cartridges under the VIVACE Mark. For example, Defendant ABM sells needle cartridges under the VIVACE Mark on Defendant ABM's Shopify account, a true and correct printout of which is attached hereto as **Exhibit P** and excerpted below:






91. In another example, Defendant ABM distributed an email promotion to prospective customers on or around March 16, 2026, in which Defendant ABM promoted and sold unauthorized replacement needle cartridges bearing the VIVACE Mark, images of which are shown below:




92. As seen in the photographs of Paragraph 91, Defendant ABM sold and

distributed a "Microneedle Cartridge System: Vivace™ RF (Insulated)" product that reflects a date of manufacture of November 4, 2024—after the distribution agreement was terminated.

93. The product photographed in Paragraph 91 further reflects that the replacement needle cartridge was "manufactured for AESTHETICS BIOMEDICAL, INC." and includes a QR code resolving to Defendant ABM's sales site.[20]

94. On information and belief based on the allegations of Paragraphs 90-93, following the termination of the parties' Distribution Agreement, Defendant ABM and/or Defendant Guerra contracted a manufacturer to produce replacement needle cartridges, which it then sold without authorization under the VIVACE Mark. Defendant ABM distributes replacement needle cartridges in packaging bearing the VIVACE Mark without ever disclosing to the purchasers that the needle cartridges are not genuine SHEnB VIVACE products.

95. Based on a historical comparison of Plaintiff's sales of VIVACE System products in the United States during the term of the Distribution Agreement with Defendant ABM and following the termination of the Distribution Agreement, Defendants have diverted tens of thousands of units of Plaintiff's VIVACE replacement tips from Plaintiff to Defendant ABM through their infringing acts, representing at least $2.2 million in lost revenue since September 2023.

96. Based on the same comparison of Paragraph 95, Defendants have diverted hundreds of sales of VIVACE System devices from Plaintiff to Defendant ABM through their infringing acts, reflecting an additional at least $7.5 million in lost revenue since September 2023.

***<u>SHEnB's SH-TIP Mark and Defendant ABM's Sale of Counterfeit SH-TIP Cartridges</u>***

97. In addition to the VIVACE Mark, SHEnB owns U.S. Trademark

---

[20] https://aesthetics-biomedical.myshopify.com/collections/skin-care.

Registration No. 7,397,912 for the mark SH-TIP for "Microneedle cartridges for radio frequency micro-needling devices being needles for medical purposes" (the "SH-TIP Mark"), which is valid, subsisting, and in full force and effect.

98. SHEnB manufactures and sells genuine replacement needle cartridges for the VIVACE Device bearing the SH-TIP Mark.

99. Defendant ABM has continued to sell replacement needle cartridges bearing the SH-TIP Mark that are not genuine SHEnB products, including through Defendant ABM's online store and through direct sales to customers.

100. As demonstrated by the manufacture date (October 28, 2025) and listed manufacturer ("Aesthetics Biomedical, Inc." – Defendant ABM) has used the SH-TIP Mark in commerce without authorization:



101. Defendant ABM's sale of cartridges bearing the SH-TIP Mark that are not genuine SHEnB products is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of those cartridges, and deprives SHEnB of revenue and control over the quality of products bearing its SH-TIP Mark.

102. Defendant ABM did not, and does not, have authorization from SHEnB to use the SH-TIP Mark in connection with the sale of replacement needle cartridges after the termination of the parties' distribution relationship.

***<u>Defendant ABM's Use of the LEGACY Mark to Conceal Continued Sale of VIVACE-Branded Cartridges</u>***

103. On information and belief, Defendant ABM has recently begun using the mark LEGACY in place of the VIVACE Mark in connection with the marketing and sale of certain radio frequency microneedling devices and related products.

104. Notwithstanding Defendant ABM's use of the LEGACY mark to market and sell devices, Defendant ABM continues to deliver replacement needle cartridges bearing the VIVACE Mark and/or the SH-TIP Mark to customers who purchase or use devices marketed under the LEGACY name.

105. Defendant ABM's practice of marketing devices under the LEGACY mark while continuing to supply VIVACE-branded and SH-TIP-branded replacement needle cartridges further evidences Defendant ABM's unauthorized and continuing use of SHEnB's marks, and is likely to cause confusion as to the source, sponsorship, or approval of the cartridges actually delivered to customers.

***<u>Defendant ABM's Distribution of Non-Compliant Replacement Needle Cartridges Without Disclosure</u>***

106. The VIVACE Device received FDA clearance for use only with specific replacement needle cartridges that were the subject of, and cleared under, Plaintiff's Premarket Submission Number K193070.

107. Owners and operators of the VIVACE Device are not permitted to use replacement needle cartridges that have not been cleared by the FDA for use with the

VIVACE Device, as the use of non-cleared cartridges is inconsistent with the device's FDA clearance and creates patient safety risks.

108. On information and belief, the replacement needle cartridges that Defendant ABM has manufactured, procured, and sold under the VIVACE Mark and/or the SH-TIP Mark following the termination of the parties' distribution relationship have not been cleared by the FDA for use with the VIVACE Device.

109. On information and belief, Defendant ABM provides these non-compliant replacement needle cartridges to owners and operators of the VIVACE Device without disclosing that the cartridges have not been cleared by the FDA for use with the VIVACE Device, exposing patients and practitioners to undisclosed safety and regulatory risks.

***<u>Defendant ABM's Unauthorized Use of Plaintiff's FDA Premarket Submission</u>***

110. On further information and belief based on investigation of public records available through the FDA's website, Defendant ABM pursued and obtained certification of unauthorized replacement needle cartridges from the FDA by using Plaintiff's Premarket Submission.

111. Specifically, Plaintiff's own Premarket Submissions to the FDA, supported by its laborious clinical trial work, secured Premarket Submission Number K193070:



Establishment Registration & Device Listing

FDA Home · Medical Devices · Databases

New Search — Back To Search Results

| | |
|---|---|
| Proprietary Name: | VIVACE; VYBE RF |
| Classification Name: | ELECTROSURGICAL, CUTTING & COAGULATION & ACCESSORIES |
| Product Code: | GEI |
| Device Class: | 2 |
| Regulation Number: | 878.4400 |
| Medical Specialty: | General & Plastic Surgery |
| Registered Establishment Name: | ShenB Co Ltd |
| Registered Establishment Number: | 3010226575 |
| Premarket Submission Number: | K193070 |
| Owner/Operator: | ShenB Co Ltd |
| Owner/Operator Number: | [illegible] |
| Establishment Operations: | Manufacturer |

112. Through investigation of other FDA submissions, Plaintiff identified

entries for SMICNA PTE Ltd. ("SMICNA"), of Singapore, as a contract manufacturer[21]:

1 result found for **Establishment Registration or Business Trade Name** : *SMICNA*

New Search

| Establishment Name | | Registration Number | Current Registration Yr |
|---|---|---|---|
| SMICNA PTE LTD | SINGAPORE | 3015506965 | 2026 |
| • Electrosurgical, Cutting & Coagulation & Accessories - Vivace Experience; Vivace Ultra | | | Contract Manufacturer |
| • System, Imaging, Pulsed Echo, Ultrasonic - Vivace Experience; Vivace Ultra | | | Contract Manufacturer |
| • Skin Resurfacing Rf Applicator - Vivace Experience; Vivace Ultra | | | Contract Manufacturer |
| • Electrosurgical, Cutting & Coagulation & Accessories - Vivace Experience; Vivace Ultra | | | Contract Manufacturer |

113. SMICNA's filings with the FDA included reliance on Plaintiff's Premarket Submission Number as a predicate device, asserting substantial equivalence by relying on Plaintiff's extensive clinical work to claim the new product was safe and effective:

**Establishment Registration & Device Listing**

FDA Home • Medical Devices • Databases

New Search | Back To Search Results

| | |
|---|---|
| **Proprietary Name:** | Vivace Experience; Vivace Ultra |
| **Classification Name:** | ELECTROSURGICAL, CUTTING & COAGULATION & ACCESSORIES |
| **Product Code:** | GEI |
| **Device Class:** | 2 |
| **Regulation Number:** | 878.4400 |
| **Medical Specialty:** | General & Plastic Surgery |
| **Registered Establishment Name:** | SMICNA PTE LTD |
| **Registered Establishment Number:** | 3015506965 |
| **Premarket Submission Number:** | K193070 |
| **Owner/Operator:** | Smicna Pte Ltd |
| **Owner/Operator Number:** | 10085900 |
| **Establishment Operations:** | Contract Manufacturer |

114. SMICNA's submissions to the FDA further reflect Defendant ABM as its U.S. Agent for Service:

---

[21] Following Plaintiff's identification of the SMICNA records and a formal complaint submitted through Plaintiff's FDA agent, and as of July 6, 2026, SMICNA's FDA submission entries no longer assert ownership/operation of Plaintiff's Premarket Submission Number.

New Search | Back To Search Results

**Establishment:**
SMICNA PTE LTD
3 Soon Lee St.
#05-01 Pioneer Junction
Singapore Central Singapore 627606 SG
**Registration Number:** 3015506965
**FEI Number*:** 3015506965
**Status:** Active
**Date Of Registration Status:** 2026

**Owner/Operator:**
Smicna Pte Ltd
3, Soon Lee St.
#05-01 Pioneer Junction
Singapore Central Singapore 627606 SG
**Owner/Operator Number:** 10085900

**Official Correspondent:**
Chee Lim
3, Soon Lee St.
#05-01 Pioneer Junction
Singapore, Central Singapore SG 627606
**Phone:** 65-6-2624250

**US Agent:**
Morgan Seburn
Aesthetics Biomedical, Inc.
7227 N 16th St Ste 160
Phoenix, AZ US 85020
**Phone:** 714 3056063 Ext
**Email:** Mseburn@Aestheticsbiomed.Com

* Firm Establishment Identifier (FEI) should be used for identification of entities within the imports message set

115. On information and belief based on SMICNA's submissions to the FDA, Defendant ABM contracted SMICNA to manufacture replacement needle cartridges distributed and sold under the VIVACE Mark without authorization, including the needle cartridge depicted above at Paragraph 76.

116. Defendant ABM's use of the VIVACE Mark and related marks, including VIVACE ULTRA and VIVACE EXPERIENCE, to sell unauthorized devices and replacement needle cartridges was and is likely to cause confusion.

117. Defendant ABM's sales of VIVACE Systems, including replacement needle cartridges sold under or bearing the VIVACE Mark, have caused and continue to cause irreparable harm to Plaintiff.

118. The unauthorized replacement needle cartridges sold by Defendant ABM under the VIVACE Mark impose safety concerns for patients as the needle tips of the

needle cartridges pierce the skin of the patient, and are required to be a single-use sterile consumable part. Defendant ABM's unauthorized replacement needle cartridges are manufactured outside the observation and strict quality control of Plaintiff, to the irreparable harm of Plaintiff's accrued goodwill and reputation.

119. Further, Defendant ABM's actions have deprived Plaintiff of the revenue associated with sales of the VIVACE System, including replacement needle cartridges. On information and belief based on its knowledge of the market, Defendant ABM has sold large quantities of the subject replacement needle cartridges, depriving Plaintiff of such revenue and unjustly benefiting from such sales.

120. Defendant ABM's unauthorized replacement needle cartridges are sold without any disclosure that the products are not genuine products manufactured by Plaintiff.

121. Plaintiff did not consent, license, or otherwise authorize Defendant ABM's use of the VIVACE mark in commerce after July 2022.

***The Parties' 2023 Settlement Agreement and Post-Settlement Conduct***

122. On September 4, 2023, the parties entered into a Settlement Agreement resolving LCIA Arbitration No. 225560 relating to Defendant ABM's distribution and sale of Plaintiff's VIVACE-branded products, pursuant to which the parties released claims that had been or could have been raised in that arbitration and agreed not to initiate new legal actions against each other regarding distribution and sale of SHEnB's VIVACE products in the United States, without waiving either party's right to pursue claims based on new facts arising after the Settlement Agreement's execution.

123. All conduct alleged in this Complaint, including Defendant ABM's unauthorized use of the VIVACE Mark on the www.vivaceultra.com and www.vivaceexperience.com websites, in connection with the promotion and sale of unauthorized replacement needle cartridges manufactured, the promotion and sale of RF microneedling devices not manufactured by SHEnB, and the June 2026 Instagram promotion, occurred after September 4, 2023, and constitutes new facts arising after the

Settlement Agreement, independent of the claims resolved in the LCIA Arbitration. In addition, the covenant in the Settlement Agreement limiting new legal actions does not apply to claims based on the foregoing conduct because none of the conduct involves SHEnB's VIVACE products, but instead involves imitation devices and needle cartridges not manufactured by SHEnB.

124. This Complaint does not arise out of or seek to enforce the Settlement Agreement and is not subject to the Settlement Agreement's arbitration provision.

**COUNT I**

**(Infringement, False Designation of Origin, and Unfair Competition,**
**15 U.S.C. § 1125(a)(1)(A))**

125. SHEnB incorporates by reference Paragraphs 1–124 of this Complaint as if set forth fully herein.

126. As a result of the uses described at Paragraphs 1 through 60, SHEnB owns valid and protectable common-law trademark rights in the VIVACE Mark in connection with radio frequency microneedling devices, replacement needle tip cartridges, and related goods and services.

127. SHEnB created, adopted, and used the VIVACE Mark before Defendants' first use of VIVACE or any VIVACE-formative mark.

128. SHEnB used the VIVACE Mark in United States commerce before entering into any distribution or license relationship with Defendants.

129. Defendants were not the creator, owner, or source of the VIVACE Mark. Instead, Defendant ABM acted only as SHEnB's distributor and licensee.

130. SHEnB never assigned the VIVACE Mark, or any goodwill associated with the VIVACE Mark, to Defendants.

131. Defendant ABM's license and authorization to use the VIVACE Mark expired or otherwise terminated no later than July 2022.

132. After termination of its license and authorization, Defendants continued to use in commerce the VIVACE Mark, and/or confusingly similar marks including the

VIVACE Mark, without SHEnB's consent.

133. Defendants' unauthorized uses include, without limitation, use of the VIVACE Mark, and/or confusingly similar marks including the VIVACE Mark, in connection with the advertising, marketing, promotion, offer for sale, and/or sale of (1) radio frequency microneedling devices, (2) replacement needle tips for radio frequency microneedling devices, and (3) skin care products.

134. Defendants' unauthorized uses are likely to cause consumers, patients, medical professionals, distributors, resellers, and others to believe mistakenly that Defendants' goods or services originate from, are affiliated with, are connected to, are sponsored by, or are approved by SHEnB.

135. Defendants' unauthorized uses are also likely to cause confusion as to whether Defendant ABM remains an authorized distributor, licensee, representative, or business partner of SHEnB.

136. Defendants' unauthorized use of the VIVACE Mark was and is identical or highly similar to SHEnB's VIVACE Mark.

137. Defendants' conduct has been willful, including their continued use of the VIVACE Mark after the TTAB's February 2025 decision cancelling Defendant ABM's VIVACE and THE VIVACE EXPERIENCE registrations, notwithstanding the pendency of Defendant ABM's appeal of that decision.

138. The goods and services offered by Defendant ABM and promoted by Defendants under the VIVACE Mark are identical, closely related, or complementary to SHEnB's goods and services.

139. Defendant ABM's goods and services are marketed and offered through the same or overlapping channels of trade and to the same or overlapping classes of purchasers as SHEnB's goods and services.

140. Defendants' conduct constitutes false designation of origin, false or misleading description of fact, and unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

141. Defendants have unlawfully and wrongfully derived income and profits, and have been unjustly enriched by the foregoing acts.

142. Defendants' conduct has caused and, unless enjoined, will continue to cause irreparable harm to SHEnB, including harm to SHEnB's goodwill, reputation, customer relationships, and control over the VIVACE Mark, for which there is no adequate remedy at law.

143. SHEnB is entitled to injunctive relief, damages, Defendants' profits, costs, attorneys' fees in an exceptional case, and all other relief available under the Lanham Act and applicable law.

**COUNT II**

**(False Advertising and Misrepresentation Under 15 U.S.C. § 1125(a)(1)(B))**

144. SHEnB incorporates by reference Paragraphs 1–143 of this Complaint as if set forth fully herein.

145. SHEnB owns valid and protectable rights in the VIVACE Mark in connection with radio frequency microneedling devices, replacement needle cartridges, and related goods and services.

146. Defendant ABM has used the VIVACE Mark and marks incorporating the VIVACE Mark in commercial advertising and promotion of Defendant ABM's radio frequency needling devices, replacement needle cartridges, and related goods and services, including through Defendant ABM's websites, social-media accounts, online store, and direct promotional communications to existing and prospective customers as described above at Paragraphs 61-109.

147. Among other specific instances, Defendant ABM engaged in at least:

a. The operation and control of www.vivaceexperience.com and use of that website to advertise, market, and offer products under the VIVACE Mark through at least January 2025, as alleged in Paragraphs 62-63 and reflected in Exhibit B;

b. the operation and control of www.vivaceultra.com and use of that website

to advertise, market, and offer products under the VIVACE Mark through the filing of this action, as alleged in Paragraph 64;

c. on or about June 2, 2026, advertising through Defendant ABM's Instagram account a "Demo Day" at Defendant ABM's headquarters offering attendees an opportunity to "win a Vivace RF Microneedling Device," as alleged in Paragraph 66; and

d. on or about March 16, 2026, distributed an email promotion to prospective customers advertising and offering for sale replacement needle cartridges bearing the VIVACE Mark, as alleged in Paragraph 91.

148. Defendant Guerra separately and personally used the VIVACE Mark and marks incorporating the VIVACE Mark in commercial advertising and promotion of Defendant ABM's products. Among other specific instances, Defendant Guerra:

a. in or around May 2024, published to her personal Instagram account an advertisement for Defendant ABM's product stating, "The Vivace Ultra is the most advanced RF device available on the market, equipped with ultrasound-assisted RF Microneedling technology," as alleged in Paragraph 83.dd); and

b. in or around July 2025, personally published a solicitation for a "special CEO 4th of July" sale promoting VIVACE services and consumables as well as new VIVACE devices, as alleged in Paragraph 83.de).

149. On information and belief based on the allegations of at least Paragraphs 79–83, Defendant Guerra also authorized, directed, and participated in Defendant ABM's advertising and promotion of products under the VIVACE Mark, including after Defendant ABM's authorization to use the VIVACE Mark had terminated.

150. The foregoing advertisements and promotions were false or misleading because they used the VIVACE Mark to identify and promote products that were not SHEnB's genuine VIVACE products and misleadingly represents the nature, characteristics, qualities, or origin, of Defendant ABM's goods and services.

151. More specifically, Defendants' advertisements and promotional efforts represented, expressly or by necessary implication, that the radio frequency microneedling devices and replacement needle cartridges advertised and sold under the VIVACE Mark by Defendant ABM constituted genuine or authorized VIVACE products, or an authorized continuation of the VIVACE product line. Those representations were false or misleading because Defendant ABM's authority to distribute SHEnB's VIVACE products and use the VIVACE Mark terminated no later than July 2022, Defendant ABM thereafter placed no additional orders for authentic VIVACE products from SHEnB, and the devices and replacement needle cartridges subsequently advertised and sold by Defendants under the VIVACE Mark were not manufactured, supplied, approved, or authorized by SHEnB.

152. Defendants' advertising was additionally false or misleading to the extent it represented that microneedling devices sold under or in connection with the VIVACE Mark were manufactured by Defendant ABM or made in the United States without disclosing that those devices were not the VIVACE devices manufactured by SHEnB that Defendant ABM had previously been authorized to distribute. Defendant ABM's advertising and sale of replacement needle cartridges bearing the VIVACE Mark was further false or misleading because Defendant ABM did not disclose that those replacement needle cartridges were not genuine SHEnB VIVACE replacement cartridges. Each Defendant therefore participated in identified commercial advertisements or promotions that communicated to consumers, medical professionals, distributors, resellers, or other purchasers that products offered by Defendant ABM under the VIVACE Mark were genuine, authorized, sponsored, approved, or otherwise associated with SHEnB when they were not.

153. These false or misleading representations were material because the identity, source, authorization, manufacturer, compatibility, and regulatory status of radio frequency microneedling devices and replacement needle cartridges are facts likely to influence the purchasing decisions of consumers, medical professionals, distributors,

resellers, and other purchasers. Defendants made and disseminated the foregoing advertisements and promotional statements in interstate commerce, including through publicly accessible websites, social-media accounts, online sales channels, and direct promotional communications to customers and prospective customers located throughout the United States.[22]

154. Defendants' false or misleading advertising and promotional statements have deceived or have the tendency to deceive a substantial segment of the relevant purchasing public by causing purchasers to believe that the products advertised under the VIVACE Mark were genuine SHEnB products or were manufactured, supplied, sponsored, approved, licensed, or otherwise authorized by SHEnB.

155. Defendants' conduct has caused or is likely to cause injury to SHEnB, including diversion of sales, loss of goodwill, loss of control over the VIVACE Mark, reputational harm, and damage to SHEnB's relationships with customers, distributors, and medical professionals.

156. Defendants' use of the VIVACE Mark on replacement needle cartridges that are not manufactured by SHEnB also raises patient-safely concerns as the needle cartridges are single-use sterile consumables that penetrate the skin.

157. Defendants' conduct has been willful, including their continued advertising and promotion of the VIVACE Mark after Defendant ABM's authorization to use the VIVACE Mark had terminated and after the TTAB's February 2025 decision cancelling Defendants' VIVACE and THE VIVACE EXPERIENCE registrations.

158. Defendants' conduct has caused and, unless enjoined, will continue to cause irreparable harm to SHEnB, including harm to SHEnB's goodwill, reputation, customer relationships, and control over the VIVACE Mark, for which there is no adequate remedy at law.

159. Defendants have unlawfully and wrongfully derived income and profits,

---

[22] *See, e.g.*, Ex. K (infringing promotion using VIVACE Mark and directed to and discussing a provider based in New York, New York).

and have been unjustly enriched by the foregoing acts. Defendants' conduct constitutes false advertising and misrepresentation in violation of 15 U.S.C. § 1125(a)(1)(B), and SHEnB is entitled to injunctive relief, damages, Defendants' profits, costs, attorneys' fees in an exceptional case, corrective advertising, and all other relief available under the Lanham Act and applicable law.

**COUNT III**

**(Arizona Common Law Trademark Infringement and Unfair Competition)**

160. SHEnB incorporates by reference Paragraphs 1–159 of this Complaint as if set forth fully herein.

161. SHEnB owns valid and protectable common-law rights in the VIVACE Mark.

162. SHEnB acquired rights in the VIVACE Mark through its creation, adoption, and prior use of the mark in connection with radio frequency microneedling devices and related goods and services.

163. SHEnB's rights in the VIVACE Mark predate Defendants' use of the VIVACE Mark and any mark including the VIVACE Mark.

164. Defendants previously used the VIVACE Mark only pursuant to a limited license from SHEnB and only in connection with Defendant ABM's role as SHEnB's distributor and licensee.

165. SHEnB never assigned the VIVACE Mark, or the goodwill associated with the VIVACE Mark, to Defendants.

166. Defendant ABM's license and authorization to use the VIVACE Mark expired or otherwise terminated with the parties' distribution and license relationship.

167. After termination of Defendant ABM's license and authorization, Defendants continued using the VIVACE Mark, and/or confusingly similar marks including the VIVACE Mark, in commerce without SHEnB's consent.

168. Defendants' unauthorized uses include, without limitation, use of the VIVACE Mark in connection with the advertising, marketing, promotion, offer for sale,

and/or sale of radio frequency microneedling devices, replacement needle cartridges and related goods or services.

169. By virtue of the foregoing acts, Defendants have caused a likelihood of confusion among the public and unfairly competed with Plaintiff in violation of the common law of the State of Arizona and A.R.S. §§ 44-1451 and 44-1452.

170. Defendants' unauthorized uses are likely to cause confusion, mistake, or deception as to the source, origin, affiliation, sponsorship, connection, or approval of Defendants' goods and services.

171. Defendants' unauthorized uses are also likely to cause consumers, medical professionals, distributors, resellers, and others to believe mistakenly that Defendants remain affiliated with, authorized by, sponsored by, or approved by SHEnB.

172. Defendants' conduct constitutes common-law trademark infringement and unfair competition under Arizona law.

173. Defendants' acts are willful, including their continued use of the VIVACE Mark after the TTAB's February 2025 decision cancelling Defendant ABM's VIVACE and THE VIVACE EXPERIENCE registrations, notwithstanding the pendency of Defendant ABM's appeal of that decision.

174. Defendants' conduct has caused and, unless enjoined, will continue to cause irreparable harm to SHEnB, including harm to SHEnB's goodwill, reputation, customer relationships, and control over the VIVACE Mark.

175. Defendants' conduct has damaged SHEnB in an amount to be proven at trial.

176. Defendants have unlawfully and wrongfully derived income and profits, and have been unjustly enriched by the foregoing acts. Defendants have caused, and will continue to cause, irreparable harm to Plaintiff for which there is no adequate remedy at law.

177. Because Defendants have engaged in knowing, willful, and conscious disregard for the rights of Plaintiff, Defendants are guilty of oppression, fraud, and malice,

entitling Plaintiff to an award of punitive damages.

178. SHEnB is entitled to injunctive relief, damages, Defendants' profits, costs, attorneys' fees where available, and all other relief available under Arizona law and principles of equity.

**COUNT IV**

**(Infringement of Registered Trademark, 15 U.S.C. § 1114)**

179. SHEnB incorporates by reference Paragraphs 1–178 of this Complaint as if set forth fully herein.

180. SHEnB is the owner of U.S. Trademark Registration No. 7,397,912 for the mark SH-TIP for "Microneedle cartridges for radio frequency micro-needling devices being needles for medical purposes," which is valid, subsisting, and in full force and effect.

181. SHEnB's federal registration of the SH-TIP Mark constitutes prima facie evidence of the validity of the SH-TIP Mark, of SHEnB's ownership of the SH-TIP Mark, and of SHEnB's exclusive right to use the SH-TIP Mark in commerce in connection with the goods identified in the registration.

182. Defendant ABM has used, without SHEnB's consent, a reproduction, counterfeit, copy, or colorable imitation of the SH-TIP Mark (*see* Paragraph 100) in commerce in connection with the sale, offering for sale, distribution, and advertising of replacement needle cartridges for radio frequency micro-needling devices.

183. Defendant ABM's unauthorized use of the SH-TIP Mark is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Defendant ABM's replacement needle cartridges.

184. Defendant ABM's replacement needle cartridges sold under the SH-TIP Mark are not genuine SHEnB products and have not been manufactured, authorized, or approved by SHEnB.

185. Defendant ABM's conduct has been willful, in that Defendant ABM continued to sell replacement needle cartridges bearing the SH-TIP Mark notwithstanding

Defendant ABM's knowledge that its license and authorization to distribute SHEnB's products had terminated.

186. Defendant ABM has unlawfully and wrongfully derived income and profits, and has been unjustly enriched, by its unauthorized use of the SH-TIP Mark.

187. Defendant ABM's conduct has caused and, unless enjoined, will continue to cause irreparable harm to SHEnB, including harm to SHEnB's goodwill, reputation, and control over the quality of products bearing the SH-TIP Mark, for which there is no adequate remedy at law.

188. SHEnB is entitled to injunctive relief, damages, Defendant ABM's profits, costs, attorneys' fees in an exceptional case, and all other relief available under 15 U.S.C. §§ 1114, 1116, 1117, and 1118, and applicable law.

## COUNT V

**(Unjust Enrichment)**

189. SHEnB incorporates by reference Paragraphs 1–188 of this Complaint as if set forth fully herein.

190. As a result of the conduct alleged herein, Defendants have been unjustly enriched to Plaintiff's detriment.

191. Defendant ABM's unjust enrichment includes, without limitation, the diversion of sales from customers intending to buy Plaintiff's VIVACE System products (including devices and replacement needle cartridges), and the unauthorized exploitation of Plaintiff's VIVACE Mark to sell additional products and services such as "Vivace Ultravision" and the "Vivace Experience."

192. Defendant Guerra's unjust enrichment includes, without limitation, professional and market recognition for the VIVACE System's innovative technology, and on information and belief based on her position as the CEO of Defendant ABM, financial benefits based on the sales of products infringing on the VIVACE Mark.

193. Defendants thereby obtained revenues, profits, goodwill, customer attention, professional and market recognition, and/or avoided marketing and brand-

development expenditures through their unauthorized exploitation of Plaintiff's VIVACE Mark and the goodwill associated with that Mark.

194. Plaintiff suffered the corresponding loss of sales, customer opportunities, control over its goodwill, and/or the economic value of the goodwill and market recognition Plaintiff created in the VIVACE Mark.

195. Defendants obtained those benefits because consumers encountering Defendants' use of the VIVACE Mark associated that designation and its accumulated goodwill with Plaintiff and/or the VIVACE System, thereby permitting Defendants to capture demand, and divert sales, customer attention, and commercial value that otherwise belonged to Plaintiff by virtue of technological and commercial development of the VIVACE System in the United States.

196. Defendants had no contractual, statutory, or other lawful entitlement to appropriate or retain the commercial value and goodwill associated with Plaintiff's VIVACE Mark.

197. Under the circumstances, permitting Defendants to retain the revenues, profits, avoided expenditures, and other benefits attributable to their exploitation of Plaintiff's mark and goodwill without compensation would be inequitable.

198. To the extent Plaintiff's remedies under the Lanham Act or other causes of action do not provide a complete remedy for the benefits unjustly obtained and retained by Defendants, Plaintiff pleads this claim in the alternative pursuant to Fed. R. Civ. P. 8(d)(2) and (3) as Plaintiff has no adequate remedy at law.

199. Plaintiff therefore seeks an accounting and disgorgement of all ill-gotten gains and profits resulting from Defendants inequitable activities.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for the following relief:

A. That the Court enter judgment in Plaintiff's favor on all claims;

B. A judgment and order that Defendants have engaged in trademark

infringement, false designation of origin, unfair competition, false advertising, and infringement of the SH-TIP Mark, in violation of 15 U.S.C. §§ 1114, 1125(a)(1)(A), and 1125(a)(1)(B);

C. A judgment and order awarding Plaintiff the amount found as actual damages for Defendants' trademark infringement, false designation of origin, unfair competition, false advertising, and infringement of the VIVACE Mark and SH-TIP Mark under 15 U.S.C. § 1117(a), and A.R.S. § 44-1451(B)(2)(b);

D. A judgment and order for an accounting of Defendants' profits and unjust gains associated with the conduct alleged herein, and awarding such profits and gains to Plaintiff, in an amount of at least $9.7 million for diverted sales and as otherwise established, as provided by 15 U.S.C. § 1117(a) and applicable law;

E. A judgment and order requiring Defendants to undertake appropriate corrective advertising or other corrective measures sufficient to remedy the confusion and harm caused by Defendants' conduct;

F. A judgment and order awarding punitive and exemplary damages under Arizona law in an amount sufficient to punish Defendants and deter similar misconduct;

G. A judgment and order enhancing Defendants' profits or Plaintiff's damages, as permitted by 15 U.S.C. § 1117(a), in light of the circumstances of the case;

H. A judgment and order requiring Defendants to remove, disable, recall, deliver up, destroy, or otherwise dispose of all products, labels, signs, packaging, advertisements, promotional materials, websites, domain-name content, social-media content, electronic files, and other materials in Defendants' possession, custody, or control that display or embody the VIVACE Mark or the SH-TIP Mark, pursuant to 15 U.S.C. §§ 1116 and 1118;

I. A judgment and order awarding Plaintiff its costs, expenses, together with pre-judgment and post-judgment interest, on each and every monetary award;

J. For a judgment and order permanent enjoining Defendants from any further use of the VIVACE Mark, the SH-TIP Mark, or marks including either mark, including

under A.R.S. § 44-1451(B)(1);

K. For an order transferring the VIVACE Domains to Plaintiff, or alternatively ordering the forfeiture or cancellation of the VIVACE Domains;

L. A judgment and order requiring Defendants to transfer to Plaintiff or, alternatively, permanently discontinue and relinquish any social-media account name, handle, page, online storefront, or other digital identifier controlled by Defendants that incorporates the VIVACE Mark or any confusingly similar designation;

M. A determination that this case is exceptional under 15 U.S.C. § 1117(a);

N. For an award to Plaintiff of its reasonable attorneys' fees, including under 15 U.S.C. § 1117(a); and

O. For such other and further relief in law and equity to which Plaintiff may be justly entitled.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b)(1), Plaintiff demands a trial by jury on all claims and issues triable to a jury.

DATED this 4th day of September, 2026.

OSBORN MALEDON, P.A.

By s/ Phillip W. Londen
Eric M. Fraser
Phillip W. Londen
2929 N. Central Avenue, Suite 2000
Phoenix, Arizona 85012

MERCHANT & GOULD P.C.
Michael Erbele (*pro hac vice application forthcoming*)
Scott W. Johnston (*pro hac vice application forthcoming*)
Brent E. Routman (*pro hac vice application forthcoming*)
James W. Beard (*pro hac vice application forthcoming*)
150 South Fifth Street, Suite 2200
Minneapolis, Minnesota 55402

*Attorneys for Plaintiff Sung Hwan E&B Co., Ltd. d/b/a SHEnB Co. Ltd.*